**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

BRADY MISTIC,

      Plaintiff.

v.

NICHOLAS HANNING,
ELLIE SUMMERS,
CITY OF IDAHO SPRINGS, and
BOARD OF COUNTY COMMISSIONERS OF CLEAR CREEK COUNTY.

      Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

      Plaintiff, BRADY MISTIC, by and through its attorneys of the Civil Rights Litigation Group, PLLC, hereby submits this Complaint and Jury Demand, and alleges as follows:

**<u>INTRODUCTION</u>**

      1.      This is a civil rights action seeking justice for the shocking use of unnecessary police force and wrongful incarceration of a deaf man whom the Defendant officers rashly attacked after failing to recognize his disability and misinterpreting his non-threatening attempts to see and communicate as challenges to police authority. When one of the officers hurt *himself* in the course of the attack, the Defendant officers falsely charged the deaf man with assault on a police officer in an illusory attempt to cover up their misconduct – which caused the man to unjustifiably spend months in jail without appropriate accommodations to help him communicate that he was, in fact, the victim.

1

2.      This ordeal began with what should have been a simple traffic stop. Mr. Mistic allegedly ran a stop sign, a civil not criminal offense, just before pulling into a laundry mat where he was going to do laundry. Just after he parked his car and began walking in, the Defendant officers pulled up nearby and shone a light in his eyes. Confused, blinded by police lights, and unable to hear or know what was going on, Mr. Mistic stopped walking, attempted to communicate with his hands, and then put his hands up in a non-threatening manner. Without providing any warning, commands, or reasonable opportunity for communication, the Defendant Officers quickly grabbed Mr. Mistic, slammed him to the ground, and repeatedly tasered him despite him saying "no ears" to communicate he was deaf.

3.      Police further humiliated and degraded Mr. Mistic for being deaf by denying him the means to communicate or understand what was going on. Police forced him to sit on the ground in handcuffs without having an interpreter or other means to communicate. In jail, Mr. Mistic was repeatedly denied an interpreter or other reasonable means of communication for four months.

4.      The false charges against Mr. Mistic were ultimately dismissed.

5.      Mr. Mistic seeks compensation for physical and emotional harm, pain and suffering, permanent scarring, and economic damages, as well as punitive sanctions against the individual officers to punish and deter the blatant abuse of authority and violation of rights evident here.

### JURISDICTION AND VENUE

6.      Plaintiff's claims are brought pursuant to 42 U.S.C. §1983, the United States Constitution, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 *et seq.*, States.

7.      This Court has jurisdiction of the subject matter pursuant to 28 U.S.C. §1331.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because all the events alleged herein occurred in the State of Colorado.

9.      Jurisdiction supporting the Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. §1988.

## PARTIES

10.      Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

11.      Plaintiff, Brady Mistic, was at all times relevant to this Complaint, a resident of the State of Colorado and physically disabled (deaf in both ears) within the meaning of the Americans with Disabilities Act.

12.      Defendant Nick Hanning was at all times relevant to this Complaint employed as a police officer for the City of Idaho Springs, Colorado. Defendant Nick Hanning was acting under color of law in his capacity as a police officer at the time of the incident. He is herein identified in his individual capacity.

13.      Defendant Ellie Summers was at all times relevant to this Complaint employed as a police officer for the City of Idaho Springs, Colorado. Defendant Ellie Summers was acting under color of law in his capacity as a police officer at the time of the incident. She is herein identified in her individual capacity.

14.      Defendant City of Idaho Springs, Colorado is a Colorado municipality, established under the laws of Colorado. Defendant City of Idaho Springs is responsible for the policies, practices, supervision, training, and final decision-making of the Idaho Springs Police Department and its officers. Defendant City of Idaho Springs was at all times relevant to this Complaint the

employer of Defendants Hanning and Summers and ultimately controlled the supervision and oversight of its department, police officers, and the faulty police department policies and training employed and/or relied upon at the time of the incident.

15.    Defendant Board of County Commissioners of Clear Creek County, Colorado is a county municipality established under the laws of Colorado, is responsible for maintaining and facilitating services and benefits provided by the Clear Creek County Jail, and is an appropriate "public entity" within the definition of Title II of the ADA, 42 U.S.C. § 12131(1)(A) and (B).

## BACKGROUND FACTS

16.    Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

17.    Mr. Mistic is completely deaf in both ears. He primarily uses American Sign Language (ASL) to communicate. He is unable to lip-read and can vocalize few words. As a result, it is necessary for him to use writing to communicate with persons who do not know ASL. The little speech he is able to vocalize is thick and heavy in a manner common to deaf persons in the community.

18.    Mr. Mistic commonly communicates that he is deaf and that he needs to write to communicate by raising his hands, touching or covering his ears, and shaking his head "no" and then mimicking the act of writing on a piece of paper. He has used this pantomimic language to communicate to police officers that he is deaf and needs to write to communicate during several ordinary traffic stops on occasions prior to this one. The officers who have encountered him during these stops have not had any difficulty understanding that he was disabled and have provided appropriate accommodations to him in the past.

19.     On September 17, 2019, Mr. Mistic was running errands in his car and traveling to the laundry mat to do laundry.

20.     At approximately 7:37 p.m., Mr. Mistic drove into a shopping complex area and parked in the parking lot of a laundry mat.

21.     Defendant Officers Nick Hanning and Ellie Summer were parked near an intersection and allegedly saw Mr. Mistic run a stop sign one block away from the laundry mat.

22.     Failure to stop at a stop sign is a Class A traffic infraction, which is a civil and not a criminal offense. Colorado law does not authorize arrest for violation of a Class A traffic infraction.

23.     Defendants Hanning and Summers followed Mr. Mistic into the parking lot and saw him park his vehicle.

24.     The Defendants did not follow immediately behind Mr. Mistic as he parked in the parking lot. Instead, the Defendants followed slowly and then parked their vehicle on the corner of the laundry mat parking lot, near the door of the business, parallel to and more than 50 feet from where Mr. Mistic parked his vehicle. The Defendants did not park behind or next to Mr. Mistic's vehicle as a normal, reasonable officer would be expected to do during a normal traffic stop.

25.     As Mr. Mistic exited his car and walked past a dumpster in between his vehicle and the police vehicle, toward the laundry door, he was blinded by police vehicle lights and/or a spotlight shone by the officers. He could only vaguely see objects and a police vehicle in front of him.

26.     He had no idea what was happening, what the police were doing, or if the officers' presence had anything to do with him.

27.     Confused and bewildered, and without being able to hear, see, or understand what was going on, Mr. Mistic stopped walking and stood in place near the corner of the laundry mat building, approximately five-to-ten feet from the police vehicle.

28.     Mr. Mistic did not move towards the officers as they were getting out of their vehicle or as they rapidly approached.

29.     Mr. Mistic did not make any threatening or furtive movements.

30.     Mr. Mistic briefly attempted to communicate with his hands and shook his head.

31.     As Defendants rapidly got out of their vehicle and approached Mr. Mistic, he raised his hands up with palms out in an obvious non-threatening position of deference and/or surrender.

32.     Defendant Hanning rapidly raced ran over toward Mr. Mistic, yelling "you're gonna come up on us like that."

33.     Defendants Hanning and Summers knew or should have known that Mr. Mistic was deaf because he was not making any verbal speech and was attempting to communicate with his hands instead.

34.     Defendant Hanning, immediately went hands-on with Mr. Mistic, without any warning or attempt to communicate.

35.     Defendant Hanning grabbed Mr. Mistic's sweatshirt and threw him to the ground, bashing Mr. Mistic's head into the concrete.

36.     Defendant Hanning pinned Mr. Mistic to the ground on his back while Mr. Mistic held his hands out with his palms facing Defendant Hanning in an attempt to show that he meant no harm and was doing nothing to threaten the officer.

37.     On the ground, Defendant Summers joined in, grabbing Mr. Mistic.

38.     Mr. Mistic was rolled onto his stomach, with his hands above his shoulders near his head.

39.     Both Defendants ignored that Mr. Mistic held his open and empty hands up in an obvious effort to show he meant no harm.

40.     Defendant Summers pulled out her Taser and drive stunned Mr. Mistic.

41.      Mr. Mistic cried out, saying "no ears."

42.     Defendant Summers ignored Mr. Mistic's plea and then tased Mr. Mistic a second time.

43.     Defendants knew or should have known by Mr. Mistic's lack of speech, hand gestures, and/or thick-tongued articulation of the words "no ears" that he was deaf and could not hear or understand the officers.

44.     After handcuffing him, Defendant Summers sat Mr. Mistic on the ground with his hands behind his back while other police and EMS arrived on the scene.

45.     On scene, Mr. Mistic attempted to use clumsy verbal speech to communicate with officers when he was in handcuffs, but officers could not understand him. Any officer on scene would have known from his thick and incoherent speech, which did not consist of clear words or complete sentences, and his attempt to use his hands, that he was deaf or otherwise disabled.

46.     Defendant Summers was clearly aware that he was deaf and told other officers and EMS that he was deaf.

47.     While handcuffed, Mr. Mistic was unable to write responses to officer communications or use ASL. He stood up to try to indicate with his hands that he needed to write to communicate. Defendant Summers responded by pushing him to the ground on his back.

48.     Despite the necessity of Mr. Mistic needing to communicate about his injuries, neither officer, at any point, attempted to secure an ASL interpreter, provide a pad and paper, or otherwise provide Mr. Mistic the means to be able to communicate.

49.     Mr. Mistic was taken to the hospital for his injuries.

50.     At some time in the process of rushing up to Mr. Mistic, grabbing him, and throwing him to the ground, Defendant Hanning realized that he had caused himself to break his own leg/ankle.

51.     At no time did Mr. Mistic threaten, physically harm, or fight with the officers.

52.     At no time did Mr. Mistic flee or attempt to flee from the scene.

53.     Nonetheless, the Defendant officers charged Mr. Mistic with second-degree assault on a police officer (a felony) and resisting arrest.

54.     After being treated at the hospital, Mr. Mistic was taken to Clear Creek County jail.

55.     At the jail, Defendant Summers looked inside Mr. Mistic's wallet and found fake movie-prop money with Chinese characters from Wish.com.

56.     Possessing play money without any intent or attempt to pass it off as real money is not a crime.

57.     Defendant Summers charged Mr. Mistic with possession of forged currency.

58.     When reporting the basis/probable cause for Plaintiff's arrest, Defendant officers asserted information that they knew to be objectively doubtful, untrue, exaggerated, and/or false, to ensure that Plaintiff would be punished for his perceived impudence and to justify their unnecessary and excessive use of force.

8

59.     The true reasons the officers were aggressive, physically rough with, and asserted charges against Mr. Mistic was that they falsely perceived Mr. Mistic's confusion, behavior, and attempts to communicate as a deaf person as disrespect, impudence, and/or suspicious or hostile behavior and/or to fabricate a reason for their unnecessary and unjustified use of force against a non-threatening deaf man.

60.     As a result of the false charges, Mr. Mistic was incarcerated for more than four months.

61.     Inevitably, all of the charges against Mr. Mistic were dismissed.

62.     While in jail, Mr. Mistic suffered even further indignity, humiliation, isolation, and discrimination due to being deaf due to being unable to communicate.

63.     Over the course of over three months, Mr. Mistic repeatedly and continually kited jail staff telling him he was deaf, that he could not use the inmate telephone phone system, that he needed an interpreter to communicate, and that he needed some kind of technological and/or service assistance to use the inmate telephone system for communication with family, friends, his attorney and/or a bail bondsman.

64.     During meetings with his attorney at the jail, Mr. Mistic was denied an interpreter.

65.     Mr. Mistic was unable to communicate with other inmates, jail staff, or his attorney except by writing notes on notebook paper that he had to request and was sparingly provided to him.

66.     Mr. Mistic felt alone, confused, and helpless to understand or interact effectively in the jail environment or with the outside world. He was frustrated that he could not explain that the

Defendant officers had misunderstood his behavior, used force without justification. and that he was innocent.

67.     Mr. Mistic suffered significant damages including, loss of liberty, emotional distress, physical injury, scarring, monetary harm, indignity, and humiliation as well as being deprived of means to communicate and otherwise being discriminated against due to his disability. He spent four months in jail, lost his car, and had to hire an attorney to defend himself against the unfounded charges levied against him.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1983 – Excessive Force
### (*Against Defendants Hanning and Summers*)

68.     Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

69.     Defendants Hanning and Summers intentionally and knowingly applied unnecessary, unreasonable, and excessive force against Mr. Mistic by grabbing him, forcefully throwing him to the ground, and tasing him repeatedly.

70.     At the time Defendants used force, Mr. Mistic did not pose a serious threat to the officers or anyone else. Mr. Mistic was visibly unarmed, showing his open and empty hands while standing in place and attempting to see, communicate, and understand what was going on.

71.     At the time force was used, Defendants failed to provide Mr. Mistic with reasonable commands, the opportunity to comply with any commands, or the opportunity to communicate that he was deaf and could not understand the officers or the nature of the encounter.

72.     At the time of the use of force, Defendants failed to utilize lesser means of force to de-escalate, reasonably communicate, and/or control the situation, despite Mr. Mistic's obvious disability and Defendants having plenty of time and opportunity to do so.

73.     Defendants continued to use force on Mr. Mistic despite his communications that he was deaf by saying "no ears."

74.     Even if Defendants were justified in stopping, detaining, or otherwise using some level of force during the encounter based on the ambiguity of the situation, the quantum of force used went far beyond that which could be considered reasonably justifiable under the circumstances.

75.     As such, the use of force by Defendants under these circumstances was objectively unreasonable.

76.     The actions as described herein of Defendants while acting under color of state law, deprived Mr. Mistic of the rights, privileges, and liberties secured by the Constitution of the United States of America, including the right to freedom from unreasonable seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. §1983.

77.     Mr. Mistic has suffered damages stemming from his injuries as described above which were proximately caused by the actions of Defendants.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. §1983 – Unlawful Arrest and Detention**
(*Against Defendants Hanning and Summers*)

78.     Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

79.     Defendants Hanning and Summers attempted to stop Mr. Mistic for a traffic infraction, a civil offense, and not a crime.

80.     Defendants were not legally authorized by state law to arrest Mr. Mistic for this offense.

81.     Defendants had no information suggesting that Mr. Mistic had committed, or was about to commit, a crime when Defendants detained and/or seized him.

82.     Nonetheless, Defendants forcefully detained and arrested Mr. Mistic and placed him in handcuffs, restricting his liberty, and took him to jail.

83.     Defendants Hanning and Summer each personally participated in the arrest of Mr. Mistic.

84.     Mr. Mistic made no movements that could reasonably be construed as violent, resistive, obstructive, or involving any use of force.

85.     Defendants completely lacked information that could have enabled the officers to reasonably suspect that a crime had been committed.

86.     The intentional and/or reckless conduct of Defendants, acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities, secured by the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. 1983, including the unlawful detention and arrest, and which caused Plaintiff's loss of liberty, physical injury, and emotional/dignitary harms.

### THIRD CLAIM FOR RELIEF
**42 U.S.C. §1983 – Malicious Prosecution**
(*Against Defendants Hanning and Summers*)

87.     Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

88.     Defendants Hanning and Summers arrested Mr. Mistic and charged him with crimes he obviously did not commit.

89.     Defendants directly caused Mr. Mistic's confinement and prosecution by arresting him, taking him to jail, and submitting a probable cause statement and police reports to the court and prosecutor that misled and resulted in an unusually prolonged criminal prosecution that lasted almost two years.

90.     When reporting the basis/probable cause for Plaintiff's arrest, Defendant officers asserted information that they knew to be objectively doubtful, untrue, exaggerated, and/or false.

91.     Defendants falsely asserted that Mr. Mistic assaulted Defendant Hanning and resisted arrest when Defendant merely injured himself in the course of using excessive force on Mr. Mistic and Mr. Mistic did nothing to threaten or otherwise use force against the officers.

92.     Defendants falsely asserted that Defendant Hanning gave commands to Mr. Mistic to "sit on the ground" and that Mistic failed to comply before the use of force when no such commands or opportunity were given.

93.     Defendants falsely asserted that Mr. Mistic resisted arrest when they knew that there was no probable cause for a charge of resisting arrest because he did not fight with the officers and was unable to comply with commands due to being deaf.

94.     Defendants falsely asserted that Mr. Mistic "fought" with Defendant Hanning and refused to obey commands to put his arms behind his back, despite knowing he was deaf and could not possibly hear those commands.

95.     Even after understanding that the Defendants were responsible for any misunderstanding about the encounter, due to their rash conduct and Mr. Mistic's disability, the officers still charged Mr. Mistic with felony crimes that created an excessively high bond and caused Mr. Mistic to remain stuck in jail.

96.     Defendants charged Mr. Mistic with criminal possession of a forged instrument without probable cause to believe that a crime had been committed because the "currency" was clearly prop or play money as it contained Chinese symbols and there was no evidence that Mr. Mistic intended to attempted to pass it off as real money.[1]

97.     This is not the only known time Defendants have made false claims to assert charges against an innocent person and have trumped up similar allegations of attempted violence with a weapon to bring false charges against another man, Michael Clark, in an attempt to cover up their misconduct and excessive force.

98.     As a result of the meritless charges, Mr. Mistic spent unnecessary time in jail and was forced to endure an unnecessary criminal prosecution, which caused him to incur criminal defense fees, bond fees, other miscellaneous court costs, lost liberty, and the loss of his vehicle.

99.     The criminal case ultimately terminated in Mr. Mistic's favor. The charges against him were dismissed by the prosecutor.

100.    Such actions by Defendants, while acting under color of law, deprived Plaintiff of

---

[1] A person commits a class 6 felony when, with knowledge that it is forged and with intent to use to defraud, such person possesses any forged instrument of a kind described in section 18-5-102. C.R.S. § 18-5-105. (1) A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed: (a) Part of an issue of money… C.R.S. § 18-5-102.

the rights, privileges, liberties, and immunities, secured by the Constitution of the United States of America, including the right to be from unreasonable seizures and unfounded criminal prosecution, pursuant to the Fourth and Fourteenth Amendments, made actionable pursuant to 42 U.S.C. 1983, which proximately resulted in the injuries described herein.

## FOURTH CLAIM FOR RELIEF
**Discrimination and/or Failure to Accommodate Pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.**
*(Against Defendants City of Idaho Springs)*

101.    Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

102.    Mr. Mistic was a disabled person within the meaning of the Americans with Disabilities Act. He is completely deaf in both ears.

103.    Defendants Hanning and Summers knew or should have that Mr. Mistic was deaf at various times during the encounter.

104.    Defendants Hanning and Summers did not receive adequate training to recognize that Mr. Mistic was deaf and/or ignored the signs that he was deaf and was attempting to communicate the best he could.

105.    Ultimately, Defendants misinterpreted Mr. Mistic's obvious signs and symptoms of his disability as illegal conduct.

106.    Defendants Hanning and Summers did not provide any warning or commands (verbally or in ASL) before using force and did not provide Mr. Mistic the reasonable opportunity to communicate before using force.

107.    Because of Mr. Mistic's disability, and behavior relating to that disability, he was treated in a disparate manner. In particular, he was singled out by Defendants Hanning and Summers for disparate treatment with escalating levels of force when they should have recognized Mr. Mistic was attempting to communicate that he was deaf.

108.    Defendants Hanning and Summers treated Mr. Mistic with contempt, disdain, and indignity instead of attempting to reasonably establish communication, to de-escalate, or understand Mr. Mistic's disability and/or Mr. Mistic's limitations.

109.    When responding to Mr. Mistic's behavior, Defendant Hanning and Summers did not utilize appropriate communications, appropriate and proportional tactics, such as the use of non-threatening communication, de-escalation, simple soft hands techniques or restraint, but instead responded with aggression and overwhelming and unnecessary force without providing reasonable opportunity for Mr. Mistic to comply or communicate he was deaf.

110.    Defendants continued using inappropriate and escalating force even after Mr. Mistic attempted to communicate that he was deaf by saying "no ears."

111.    Mr. Mistic was discriminated against and excluded from the benefits and services of the City of Idaho Springs and/or its police department, including by 1) denying him assistance relating to his disability and the means to communicate, which amplified\his confusion; 2) denying him fair and clear communication, including instructions, explanations, warnings, and reasonable opportunity to communicate before force was applied and/or escalated against him; 3) not using non-threatening communication, or simple soft hands techniques or restraint before and/or instead of resorting to forceful, aggressive, and/or retaliatory force used against Mr. Mistic.

112.    Cruelly, despite knowing he was deaf, Defendants alleged that Mr. Mistic resisted arrest despite knowing that he could not possibly hear and/or comply with any alleged commands, or otherwise have intended to resist any arrest under the circumstances.

113.    Mr. Mistic was further degraded and humiliated when officers denied reasonable accommodation for his disability by failing to provide him an interpreter or other form of communication.

114.    Defendant Summers and other officers did not secure, or even attempt to secure, a means for Mr. Mistic to communicate after he was in custody and instead treated him with disdain and degraded and humiliated him by denying him the means to communicate or for to even be able to know what was going on, why force had been used on him without apparent cause, and why he sitting on the ground in handcuffs and being taken away by police.

115.    Defendant City of Idaho Springs and its agents and employees were required by relevant provisions of the ADA to treat Mr. Mistic with reasonable care concerning his disability and the provision of benefits and services offered by the City/police department, to provide reasonable accommodations so that Mr. Mistic could meaningfully participate in the programs, services, and benefits of the City, and to implement sufficient policies, practices, procedures, and training sufficient to effectuate the mandate of the ADA to ensure that persons who suffer from disabilities were not discriminated against and relegated to second-class citizen status, particularly in such minor circumstances as a traffic stop. Instead, Mr. Mistic's disability and associate behaviors, as expressed in the episode identified above, were met with contempt, disregard, and overwhelming and unnecessary uses of force that caused serious injury.

116.    Defendant City of Idaho Springs, as a public entity, and its agents and employees, ignored Mr. Mistic's obvious needs and treated him with contempt in circumstances that are likely demonstrative of much larger systematic problems, including lack of training on encounters and communications with deaf and hard of hearing persons, and which undoubtedly contributed to the harms identified above.

### FIFTH CLAIM FOR RELIEF
**Discrimination and/or Failure to Accommodate Pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.**
*(Against Defendant Board of County Commissioners of Clear Creek County)*

117.    Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

118.    Mr. Mistic was a disabled person within the meaning of the Americans with Disabilities Act. He is completely deaf in both ears.

119.    Because of Mr. Mistic's hearing impairment, Mr. Mistic was excluded from numerous benefits and services of the jail, including but not limited to the ability to use the inmate telephone system; access to family, friends, counsel, and bail-bondsman; access to bond services/release; access to court hearings/appearances; and effective and/or adequate communication with detention staff and inmates.

120.    Mr. Mistic was not provided adequate technological or service accommodations that would have enabled him meaningful access to the jail's benefits and services for the entire time he was in jail for four months. Mr. Mistic should have been provided access to a teletypewriter (TTY), telecommunication devices for the deaf (TDD), video relay service (VRS), or otherwise

provided appropriate service-based accommodations and/or modifications that would enable him to hear and/or communicate.

121.    Even after Mr. Mistic submitted numerous requests/complaints regarding his disability and his inability to communicate in violation of the ADA, detention officers continued to refuse and/or ignore Mr. Mistic's requests for hearing/communication accommodation and/or access to technologies or assistance that would permit him to meaningfully communicate. Mr. Mistic had no other choice but to remain in custody because he could not reach persons outside of the facility to assist him.

122.    Mr. Mistic's experiences with numerous staff members over a period of over three months – to whom he repeatedly submitted written requests regarding his disability – strongly suggests a pattern and practice of mistreatment of these types of disabled persons is not uncommon and that the County has not likely provided adequate training for its staff to properly recognize or respond to inmate requests regarding and/or related to these and/or other disabilities. Though Mr. Mistic repeatedly complained to different staff members over a period of time, no one provided him with any meaningful assistance or accommodations the entire time he was in jail for four months.

123.    Mr. Mistic's experience over the course of months demonstrates that the facility has a lack of adequate equipment and/or services available for hearing-impaired individuals. Of a range of options generally available for hearing impaired persons, the jail only sparsely provided paper for him to communicate by writing. The fact that Mr. Mistic was not offered other devices or interpreter services strongly suggests that the Clear Creek County Jail has no such technology or persons available.

124.    The County was required by relevant provisions of the ADA and the Rehabilitation Act to treat Mr. Mistic equally with regard to the provision of benefits and services to all inmates in the jail, to provide reasonable accommodations so that Mr. Mistic could meaningfully participate in the programs, services, and benefits of the jail, and to implement sufficient policies, practices, procedures, and training sufficient to effectuate the mandate of the ADA that persons who suffer from disabilities (including but not limited to hearing impairments) should not be relegated to second-class citizen status, particularly in such a harsh and difficult environment.

125.    Defendant Clear Creek County, as a public entity, ignored Mr. Mistic's needs as an inmate in the jail, in circumstances that are likely demonstrative of much larger systematic problems in the Clear Creek County Jail, by the Clear Creek County Sheriff and his/her employees, and which undoubtedly contributed to the loss of liberty, emotional distress and indignity that Mr. Mistic suffered during his time in the jail.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in his favor and against all Defendants for compensatory damages, as referenced above, punitive damages against the individual Defendants, for interest as allowed by law, for costs, expert witness fees, and reasonable attorney fees, as allowed by statute or as otherwise allowed by law, and for any other and further relief that this Court shall deem just and proper.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 17th day of September, 2021.

*s/ Raymond K. Bryant*

*s/ Rachel B. Maxam*
Raymond K. Bryant, #42586
Rachel B. Maxam, #47711
Civil Rights Litigation Group, PLLC
1543 Champa Street, Suite 400
Denver, CO 80202
Phone: 720-515-6165
Fax: 720-465-1975
Email: raymond@rightslitigation.com
Email: rachel@rightslitigation.com

*Attorneys for Plaintiff*